IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED

JAN 0 4 2016
1-4-16
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES OF AMERICA ex rel. )
PHILLIP E. LAPOINTE, )
 )
        Petitioner, )
 )
    V. )      **89-cv-06998**
 )
DONALD ENLOE, Warden Dixon C.C. )
 )
        Respondent. )

## MOTION FOR RELIEF FROM JUDGMENT/ORDER
## PURSUANT TO F.R.C.P. RULE 60(b)(6)

Now comes the petitioner, Phillip E. LaPointe, pursuant to F.R.C.P.

Rule 60(b)(6), seeking to have this Honorable Court to vacate its Order

of January 19, 1990 in LaPointe v Peters, 89 C 6998 (copy attached) for
                                            exhibit A

the following reasons:

1.  The Habeas corpus petition filed in 1989 contained unexhausted claims,

which this court inadvertly held that petitioner had exhausted available

state remedies.

2.  Contrary to that conclusion, petitioner had not yet filed his initial

post-conviction 725 ILCS 5/122-1 et seq in 1989. However, as shown in this

court's Order this court did not rule on the merits of petitioner's claim that

his counsel was ineffective for failing to file a motion to withdraw petitioner's

guilty plea (see pg. 2, par. 1). Instead, saying since the state courts had

reviewed the sentence that the claim was baseless. The State court's reviewing

whether the trial judge abused his discretion at sentencing, has nothing to do

with counsel's misadvice and his ineffectiveness for failing to file a mandatory

and requested motion to withdraw guilty plea.

(1)

3. The petitioner has now exhausted his state remedies via the Post-Conviction Act as to why his counsel was ineffective (a) for inducing an involuntary and unintelligent guilty plea for misadvising the petitioner as to the statutory maximum penalty he could receive, thereby causing him to reject the States offer of 40 years. And (b) for misadvising the petitioner as to the availability for good-conduct credit against the 40 year offer. And (c) for failing to file the required motion to withdraw guilty plea pursuant to §604(d) and consult with his client when specifically requested to do so.

## ARGUMENT

A Rule 60(b)(6) motion that only challenges a district courts failure to reach the merits of a claim does not warrant treatment as a successive habeas petition and can be ruled upon by this Court without precertification by the Court of Appeals **Gonzalez v Crosby**, 162 L.Ed.2d 480 (2005); **Rodriquez v Mitchell**, 252 F.3d 191, 202-03 (2nd Cir.2001).

A grant of this motion would merely reinstate the previously dismissed petition LaPointe, 89 C 6998 for habeas relief, and would not invalidate the state conviction. The following grounds in support of this motion have nothing to do with the alleged violations of Federal rights during the pre-guilty plea and guilty plea proceedings.

## GROUNDS IN SUPPORT
## OF MOTION

1. The petitioner could not raise on his direct appeal the ineffectiveness of counsel for his misadvising his client about the statutory maximum penalty he faced, thereby causing him to reject the State's offer of 40 years. And for misadvising him as to the availability of automatic statutory good-time to be applied to that offer.

Petitioner had written to counsel to withdraw his guilty plea and counsel did not follow Ill.Sup.Crt. Rule §604(d) (see attached 1978 letter). Ineffective
Exhibit B
assistance claims are properly brought in post-conviction proceedings **Massaro v**

(2)

**United States**, 538 U.S. 500, 155 L.Ed.2d 714, 123 S.Ct. 1690 (2003).

2.  Petitioner allowed an inmate law clerk to file his habeas corpus petition
Exhibit C
(see attached affidavit) without exhausting his post-conviction remedies, due

to his mental state of being on psychotropic medications and not knowing anything

about the law. The mixed petition should have been dismissed or held in abeyance

until the state remedies were exhausted.

3.  Petitioner then raised through the Ill. PCHA counsel's ineffectiveness
Exhibit D
as to the issues in his letter of 1978 (attached exhibit). The State courts did

not properly consider the issue, instead holding the issue res judicata (see

People v LaPointe, 2-02-0702 slip op. at 8-9 unpublished decision attached).

The petitioner sought leave to file a successive petition showing cause and

prejudice that the prior court ruling in 2-02-0702 had not properly looked at

the ineffective claim. The Appellate Court agreed they had incorrectly look at

the claim earlier but in the end held they could not grant leave to file (see

People v LaPointe, 2-08-0236 unpublished decision attached).
Exhibit E slip op. at 8

4.  The Illinois Supreme Court however, ordered the Appellate Court to vacate
Exhibit F
its decision in 2-08-0236 (see attached order) and leave to file a successive

post conviction was granted but limited only to the issues contained in the 1978

letter to counsel.

5.  Petitioner filed his ineffective claims regarding counsel's failure to file

the requested motion to withdraw his guilty plea on the issues limited by the

Supreme Court. The cause proceeded to an evidentiary hearing, where counsel

admitted he failed to follow defendant's request to move to withdraw guilty plea

despite the motion being mandatory before filing a notice of appeal. Counsel also

admitted he misadvised his client of the maximum penalty he was facing. And that

he misadvised his client on the availability of automatic statutory good-time

to the offer made by the state, both of which causing the defendant to unintelligently

reject a more lenient offer of 40 years. The circuit court judge however ruled

its alright for an attorney to give bad advice "it doesn't make him ineffective".

6. The Appellate Court in a published decision **People v LaPointe**, 2015 IL App (2d) 130451 held on March 27, 2015 contrary to Federal law that counsel's decision not to follow his clients request to withdraw the guilty plea although deficient did not prejudice the defendant ¶ 67. And that counsel's misadvice about the good-time was a collateral matter not subject to a Strickland analysis, despite **Moore v Bryant**, 348 F.3d 238, 242 (7th Cir.2003) holding to the contrary and cited in petitioner's briefs. And that counsel was not ineffective for misadvising about the statutory maximum despite **Julian v Brantley**, 495 F.3d 487 (7th Cir.2007) being cited and rejected by the court as not binding on state courts, since technically counsel's advice that the crime was not brutal and heinous and that the judge could not give a sentence above 40 years was not deficient since they believe the crime is not exceptionally brutal and heinous as well even though that is the basis for the natural life sentence.

A P.L.A. was filed timely to the Illinois Supreme Court No. 119111 which denied Leave to Appeal on  September 30th        , 2015. Exhibit H.

7. The unexhausted claim from 1989 C 6998 has now been completely exhausted which is why petitioner respectfully prays this Honorable Court to vacate its previous Order so that petitioner can be given one complete opportunity for a hearing on his claims.

## RELIEF REQUESTED

Petitioner, prays this Honorable Court to vacate its previous order in LaPointe v Peters, 89 C 6998, having received proof as to the unexhausted claim for counsel's failure to file a motion to withdraw guilty plea on the grounds alleged in his 1978 letter to counsel, and having proof this claim(s) have now been exhausted at the state level. Petitioner seeks to have this court reinstate that petition limited only to the unexhausted claim contained therein, so that this court can perform a proper Strickland analysis as to these claims and proof.

Respectfully submitted,

/s/ Phillip LaPointe

(4)

## MEMORANDUM OF LAW

The petitioner realizes that there must be "extraordinary circumstances" justifying the reopening of a final judgment **Gonzalez v Crosby**, 545 U.S. 524, 535 (2005). Because this court did not and could not examine trial counsel's ineffectiveness for his failure to file the required and requested motion to withdraw his guilty plea pursuant to Illinois Supreme Court Rule §604(d) on the grounds requested by petitioner in 1978, this does constitute an extraordinary circumstance since the unexhausted claim was basically a "mixed petition" which should have been dismissed by this court **Pliler v Ford**, 542 U.S. 225, 230 (2004) quoting **Rose v Lundy**, 455 U.S. 509, 510 (1982).

As shown in the attached exhibits from the law clerks who assisted with my legal work, I was unable to do anything for myself during those early years in part due to my amnesia and from suffering from hallucinations and being placed on psychotropic medications during those years. My incompetence during trial and for years afterward is not an excuse but is a "circumstance" which led to other people trying to help me because I could not help myself with my legal work. The State courts refuse to hold retrospective competency hearings in my case despite a bona fide doubt of my competence being raised by my trial attorney to the judge, the judge appointing a psychiatrist Dr. Lyle Rossiter to examine me, but no competency hearing afterward once he issued his report and recommendation "for further testing".

Once petitioner had regained competence he took his post-conviction claims to the state court concerning his counsel, and the matter has been adjudicated now as to counsel's failure to file the requested and mandatory motion **Holtan v Parratt**, 683 F.2d 1163, 1170 (8th Cir.1982)(cited in state brief at 18); **Ward v Jenkins**, 613 F.3d 692, 699-701 (7th Cir.2010).

(1)

The underlying issues in the requested motion to withdraw guilty plea had nothing to do with whether the judge abused his discretion in 1978 for the natural life sentence that was examined by the state courts in 1980 & 1981 which this court in its Order at 2 claimed the claim "was baseless", if this court had examined the issue or done a proper Strickland analysis as to trial counsel's failure to file the requested and mandatory motion the only ruling this court could of made was counsel was deficient and that his failure to file the motion prejudiced the petitioner since his issues were never preserved for his direct appeal.

But, this court did not examine the issue of counsel's ineffectiveness for failure to file the motion to withdraw guilty plea on the grounds alleged by petitioner. Therefore pursuant to **Gonalez v Crosby**, 545 U.S. at 538 this Rule 60(b)(6) motion that only challenges this Court's failure to reach the merits of the claim does not and cannot be treated as a successive habeas petition.

The petitioner does not request to re-open the entire habeas petition despite the fact the judge made finding of brutal and heinous would be contrary to **Apprendi v New Jersey**, 530 U.S. 466 (2000) which petitioner argued to this court under the Due Process and Notice principles in 1989. Petitioner's only viable argument is that this court's failure to reach the merits of the claim concerning counsel's failure to file the motion to withdraw guilty plea deserves to be able to be presented to this court now that the claim has been exhausted in state courts, so that this court can conduct a proper Strickland analysis.

A District Court considering a Rule 60(b) motion will often take into account a variety of factors in addition to the specific ground given for reopening the judgment. [T]hese factors include "the diligence of the movant, the probable merit of the movants underlying claims, the opposing party's reliance interests in the finality of the judgment and other equitable considerations." **Gonzalez**, 545 U.S. at 540.

### DILIGENCE OF MOVANT

Petitioner's family hired an attorney Frederick Cohn to handle his post-conviction claims right after his direct appeal in 1981, counsel informed the family he had twenty (20) years to file (letter from counsel can be produced). After ten (10) years of no movement the family of petitioner fired counsel for not doing what he had agreed to do and took attorney Cohn to the ARDC which ruled "he had done enough of an investigation to earn his fees" (92-CI-1019) (See affidavit Exhibit I attached of petitioner's mother at 9-17).

Another attorney Aldo Botti was hired in the mid 1990's to pursue his post-conviction claims but instead of going to the state court to exhaust his remedies counsel tried to come to this court in **United States ex rel. LaPointe v Cooper**, No. 99 C 7557 in which this Honorable Judge severely scolded counsel Exhibit J for not knowing Federal procedures, and not seeking permission to file first.

Petitioner's family fired this attorney for hiding this court's decision from the family and petitioner after petitioner sought and received a true copy of this court's order, as opposed to the one hired counsel provided which did not include the reverse side with this court's reasoning on it.

Petitioner then on his own pro-se presented his post-conviction claims to the state court in 2-02-0702 in order to properly exhaust his state court remedies, and has taken this long to do so.

### PROBABLE MERIT OF UNDEERLYING CLAIMS

The ineffectiveness of counsel in failing to file the required motion was deficient performance **People v LaPointe**, 85 Ill.App.3d 215, 219 (2nd Dist.1980); **People v LaPointe**, 2015 IL App (2d) 130451 ¶ 67. The prejudice is clear and was raised in the post-conviction counsel's failure to file the motion deprived the petitioner from having the trial judge hear the matters counsel had misadvised the petitioner about **People v Wilk**, 124 Ill.2d 93, 104 ((1998))("the trial judge who accepted the plea and imposed sentence [must] be given the opportunity to hear the allegations of improprieties that took place outside the official proceedings and dehors the record").

The issues from petitioner's 1978 letter are simple [1] counsel told his client the sentencing range based upon the facts of defendant's case was 20-40 years, and the judge could not go beyond that because the facts of the case did not constitute exceptionally brutal and heinous conduct indicative of wanton cruelty, Evidentiary hearing held January 24, 2013 (R.690, 701, 731), counsel's erroneous advice caused petitioner to reject the states offer of 40 years believing counsel that was the maximum penalty (R.738-40).

[2] counsel misadvised the defendant about the new good-time statute that would have cut the 40 year plea offer in half, counsel misunderstood the new statute "that the warden at the penitentiary had discretion on the awarding of credit" (R.730). Petitioner was led to believe he would have to do the entire 40 years and did not know statutory good-time attached automatically to a prisoner's sentence once he entered the Department of Corrections (C.3039-3044) Had he been properly advised by counsel about this automatic attachment he would of accepted the offer, or had he been properly advised about the possibility of the judge going over a 40 year sentence he would of accepted the offer (R.239)

### UNREASONABLE APPLICATION?CONTRARY TO CASE LAW

The State courts were presented with the following controlling case's as well as persuasive authority:

1. Lafler v Cooper, 132 S.Ct. 1376 (2012); Missouri v Frye, 132 S.Ct. 1399 (2012) Padilla v Kentucky, 559 U.S. 356 (2010).

2. Julian v Bartley, 495 F.3d 487 (7th Cir.2007); Moore v Bryant, 348 F.3d 238 (7th Cir.2003).

There are several newer recent decisions on counsel's misadvice concerning a rejected plea offer Handley v U.S., 47 F.Supp.3d 712 (N.D.Ill.2014); McGowan v Burt, 43 F.Supp.3d 761 (E.D.Mich.2014). The state court decision is both an unreasonable application of cited federal law in petitioner's briefs but also is contrary to controlling authority, should this Honorable Court allow the petitioner's claims to be heard and be given one complete hearing **Gonzalez**, 545 U.S. at 542.

(4)

## STATE'S INTEREST IN FINALITY OF THE JUDGMENT

Briefly, since the petitioner never received a complete examination of his issue nor a ruling on the merits of the issue at hand, the state shouldn't have an issue with the re-opening of this case since case law holds that a movant should be given one complete opportunity to petition the Federal Court for relief.

The state court evidentiary hearing is complete, the facts testified to by the original trial attorney Edwin Simpson are a matter of record now, the only question remaining is if this Court allows the matter to be re-opened to examine the issue is whether the state court's decision is either contrary to or an unreasonable application of Federal law.

## CONCLUSION

WHEREFORE, because the habeas corpus petition in 1989 was a "mixed" petition it should have been either dismissed or held in abeyance until the petitioner exhausted his state court remedies, those remedies have now been exhausted as to the merits of counsel's failure to file the requested and mandatory motion to withdraw guilty plea.

Since this court did not rule on the merits of the claim petitioner prays this Honorable Court to re-open the matter for a merits review on whether counsel was ineffective for failing to file a motion to withdraw guilty plea when timely requested to do so for the reasons stated in his 1978 letter to counsel.

Date: December 28, 2015

Respectfully, submitted,

s/s *Phil LaPoint*

Phillip E. LaPointe

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA EX REL.        )
PHILIP E. LA POINTE,                    )
                                        )
                    Petitioner,         )
                                        )       No.   89 C 6998
        v.                              )
                                        )
HOWARD A. PETERS, WARDEN, ET AL.        )       JUDGE CHARLES R. NORGLE
                                        )
                    Respondents.        )

## O R D E R

Before the court is the petition of Phillip E. LaPointe for a writ of habeas corpus pursuant to 28 U.S.C. §2254. For the reasons set forth below, the petition is denied:

## FACTS

Petitioner is in the custody of the Attorney General at the Correctional Center, Pontiac, Illinois. On June 16, 1978, in the DuPage County Circuit Court, petitioner pled guilty to a charge of murder, and was subsequently sentenced to a term of natural life imprisonment. On appeal, petitioner's sentence was reduced to a term of 60 years' imprisonment without parole. People v. LaPointe, 85 Ill. App. 3d 215, 407 N.E.2d 196 (2nd Dist. 1980). However, the Illinois Supreme Court reversed and reinstated the term of natural life imprisonment. People v. LaPointe, 88 Ill. 2d 482, 431 N.E.2d 344 (1982). Petitioner has exhausted available state remedies.

Exhibit



A

## DISCUSSION

LaPointe has asserted numerous grounds for the relief sought, all of which are insufficient.

LaPointe alleges that he was denied the effective assistance of trial counsel when counsel failed to file a motion to withdraw his guilty plea under Ill. S. Ct. Rule 604(d), Ill. Rev. Stat. ch. 110A, ¶604(d), thereby waiving his right to appeal his natural life sentence. While counsel did not file such a motion, the state courts nevertheless considered the merits of petitioner's challenge to his sentence. LaPointe, 85 Ill. App. 3d at 219-20, 407 N.E.2d at 200-01. Petitioner's sentence was the subject to review in both the Illinois appellate and supreme courts. Therefore, this claim is baseless.

LaPointe was ordered to serve a natural life sentence under the provisions of Ill. Rev. Stat. ch. 38, 1005-8-1(a)(1) (1978), which permits a no-parole sentence if the defendant convicted of murder used "exceptionally brutal or heinous behavior indicative of wanton cruelty." LaPointe contends that this statute violates the Illinois Constitution, Article I, Section 11, under which a trial judge must consider the possibility of restoring the offender to "useful citizenship" in the community before imposing sentence.

However, to obtain habeas corpus relief, LaPointe must allege and prove a violation of the Constitution or laws of the United States. 28 U.S.C. §2254(a). The federal courts do not

-2-

sit to construe state statutes or constitutions or to otherwise resolve state law questions. See _Cramer v. Fahner_, 683 F.2d 1376, 1381 (7th Cir. 1982). This claim fails to state a cause of action and is also dismissed.

LaPointe alleges his sentence of natural life imprisonment was "excessive." Thus, he alleges an abuse of judicial discretion, which also does not provide a federal constitutional question. _Id_. This claim is dismissed as well.

LaPointe contends the Illinois Supreme Court was not "justified" in reversing the appellate court's decision and reinstating the natural life prison term. Yet, LaPointe cannot obtain habeas relief based upon an allegation of state appellate court error, however, but must plead and prove a federal constitutional or statutory violation. _Id_. This claim is dismissed.

LaPointe challenges the length of his sentence on due process and equal protection grounds, contending that, with a non-parole sentence, he will never be released and restored to the "useful citizenship" contemplated in the Illinois Constitution. LaPointe argues that there is no legitimate basis for the distinction which "returns to useful citizenship every offender sentenced to a term of imprisonment -- except a small class of murder defendants who may be sentenced to lifelong confinement . . . "

Under the rational basis test for equal protection claims, classes of similarly situated persons may not be subjected to invidious discrimination. Eisenstad v. Baird, 405 U.S. 438, 446-48 (1972). Here the Illinois legislature has reasonably and permissibly determined that society must be protected from that class of persons who commit exceptionally heinous or brutal murders. "The equal protection clause does not deny the State the power to treat different classes of persons in different ways." LaPointe, 88 Ill. 2d at 500, 431 N.E.2d at 352. This statutory classification is reasonably related to a legitimate state purpose. See Minnesota v. Clover Leaf Creamery Co., 449 U.S. 456, 462-63 (1981); McGinnis v. Royster, 410 U.S. 263, 270 (1973); Spencer v. Texas, 385 U.S. 552, 559 (1967).

On appellate review before the Illinois courts, LaPointe contended that the language "exceptionally brutal or heinous, indicative of wanton cruelty," as used in the Illinois statute under which he was sentenced, was vague and thus violated the due process clause. A vague statute violates due process because it fails to give notice of the specific conduct prohibited sufficient to allow individuals to conform their conduct to the law. The record contains citations by LaPointe to numerous cases illustrating this rule of constitutional law. However, while these cases provide the standards where the language challenged defines prohibited conduct, they do not address the specificity of language which defines aggravating circumstances justifying an

-4-

enhanced sentence. It would be a perversion of the notice principal of due process to conclude that it requires that those who intentionally and knowingly engage in specifically prohibited conduct - murder - are entitled to notice of the possible penalties for their crime sufficient to enable them to tailor the circumstances of their crime in order to avoid the maximum penalty. See Gregg v. Georgia, 428 U.S. 153, 201-03 (1976) (rejecting vagueness challenge to death penalty aggravating circumstances language under eighth and fourteenth amendment). In any event, here the language challenged consists of words of common understanding among ordinary people frequently used in constitutions and statutes. When read in context it is not unconstitutionally vague.

Finally, LaPointe argues that any natural life sentence is cruel and unusual punishment violative of the eighth amendment. LaPointe has forfeited federal review of this claim. Although LaPointe raised the eighth amendment before the Illinois Appellate Court, he did not present an eighth amendment claim to the Illinois Supreme Court. LaPointe was required to present his constitutional claim to both state courts on direct appeal. Murray v. Carrier, 477 U.S. 478, 485 (1986); Nutall v. Greer, 764 F.2d 462, 463 (7th Cir. 1985); United States ex rel. Sullivan v. Fairman, 731 F.2d 450, 452-54 (7th Cir. 1984). Furthermore, there is no showing of adequate cause and prejudice for this failure. Murray, 477 U.S. 489-90.

Moreover, this claim is without merit. State legislatures are given substantial deference in recognition of their broad authority to enact sentencing statutes. See Solem v. Helm, 463 U.S. 277, 290 (1983); Rummel v. Estelle, 445 U.S. 263 (1980) (no-parole life sentence does not violate eighth amendment); Schick v. Reed, 419 U.S. 256, 267 (1974); Spencer, 385 U.S. at 559; United States ex rel. Robinson v. Charns, 660 F. Supp. 241, 245 (C.D. Ill. 1987) (noting variety of unsuccessful challenges to recidivist sentencing statutes). The Illinois legislature may reasonably decide the point at which a natural life sentence is necessary to protect society against violent offenders. Rummel, 445 U.S. at 284-85; United States ex rel. Durham v. O'Leary, 685 F. Supp. 1051, 1055 (N.D. Ill. 1988). Natural life is not a greatly disproportionate sentence for a brutal or heinous murder.

In sum, the petition for writ of habeas corpus is denied.

IS SO ORDERED.

ENTER:

_Charles R. Norgle, Sr._

CHARLES R. NORGLE, Judge
United States District Court

DATED: 1/18/90

# United States District Court

## NORTHERN DISTRICT OF ILLINOIS
### Eastern Division

UNITED STATES OF AMERICA EX REL.
PHILIP E. LA POINTE
             V.

HOWARD E. PETERS, WARDEN, et al.

## JUDGMENT IN A CIVIL CASE

CASE NUMBER:     89C 6998

☐ Jury Verdict. This action came before the Court for a trial by jury. The issues have been tried and the jury has rendered its verdict.

☒ Decision by Court. This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

IT IS ORDERED AND ADJUDGED   that the petition of Phillip E. LaPointe

for a writ of haveas corpus pursuant to 28 U.S.C., Section 2254

is denied.

---
January 19, 1990
*Date*

H. STUART CUNNINGHAM
*Clerk*

*(By) Deputy Clerk*

U.S. GOVERNMENT PRINTING OFFICE: 1985—806-002

Sept 23, 1978

Mr. Simpson,

As you probably know I was transfered down here to Joliet right after the sentencing. What happened in our sentencing hearing? When we talked back in I think June at the plea hearing you specifically told me "because the state could'nt or did'nt have any evidence or facts of brutal and heinious that the judge could'nt go outside the 20-40 range". So what in the heck happened and why am I hear with a life sentence? To another issue when I got here a captain tuttle checked me in and said something about how I won't be getting any good time, I asked around about what is good time. I found out you get days for everyday your here which means you only serve half your sentence, Why did'nt you tell me about that? When you told me the state had offered a 40 year sentence I thought I'd be 58 when I got out, if you had told me about this good time stuff I would of taken that deal. Can we still get it? The judge said something about taking back my guilty plea within 30 days, lets do that. You can let him know how you did'nt tell me about this good time stuff and that I'll take that deal, please let me know what happens next.

Sincerly submitted
Phil LaPointe



A-7

EXHIBIT
B

535



STATE OF ILLINOIS APPELLATE COURT SECOND DISTRICT

OFFICE OF THE CLERK
847/695-3750
847/695-0092 TDD

APPELLATE COURT BUILDING
55 SYMPHONY WAY
ELGIN, ILLINOIS 60120-5558

Appeal from the Circuit Court of County of DuPage ✓

    Trial Court No.: 78CF317

THE COURT HAS THIS DAY, 03/10/11, ENTERED THE FOLLOWING ORDER IN
THE CASE OF:

    Gen. No.: 2-08-0236

    People v. LaPointe, Phillip E.

        Pursuant to the supreme court's supervisory order
        (No. 111395 (Jan. 26, 2011)), we vacate our
        judgment and remand to the circuit court to allow
        defendant the opportunity to file a successive
        post-conviction petition limited only to the
        issue of whether trial counsel was ineffective in
        failing to file a motion to withdraw defendant's
        guilty plea on the grounds stated in defendant's
        alleged September 23, 1978 letter to counsel. If
        defendant so chooses to file a successive petition
        for post-conviction relief, as limited, the
        circuit court will then consider that successive
        petition pursuant to 725 ILCS 5/122-2.1, 122-4 to
        122-6. This order does not express any opinion on
        the merits of defendant's contentions or his
        entitlement to any form of relief. If defendant
        chooses not to file a successive post-conviction
        petition, as limited, within 60 days, the circuit
        court shall so notify this court, which may then
        reinstate its judgment.

                              Robert J. Mangan
                              Clerk

cc: Thomas A. Lilien, Deputy Defender
    Paul J. Glaser
    Honorable Robert B. Berlin
    Lisa Anne Hoffman
    Lawrence M. Bauer, Deputy Director
    Edward R. Psenicka

                   A-8

FILED
2011 MAR 14 AM 7:56
CLERK OF THE 18TH JUDICIAL CIRCUIT
DU PAGE COUNTY

PETITION FOR POST CONVICTION

RELIEF DUPAGE COUNTY, ILLINOIS

PEOPLE OF THE
STATE OF ILLINOIS

$Exhibit$
$6$

78 CF 317

VS

PHILLIP LAPOINTE

## AFFIDAVIT OF BRAD LIEBERMAN

I, Brad Lieberman, after first being duly sworn to under
oath state the following:

1. During the years that Phillip LaPointe was at the Pontiac
Correctional Center, I worked as the inmate paralegal liaison
between the library and the cellhouse.

2. At that time it was the Administrative policy that those
inmates who were housed in protective custody were confined
and segregated from the general population for safety concerns.

3. Those housed inmates were not allowed to attend school or
library because of difficulties in scheduling times when these
certain inmates could use these facilities without risk of
contact with the general population.                    law clerk BL

4. As an alternative, the administration would allow a paralegal
such as myself, to go into the protective custody unit to give
out only requested forms. No law books were loaned out nor any
classes given to learn about the law were offered. Thus an inmate
who knew nothing about the law did not even have access to obtain
any information, this was such a case in Mr. LaPointe's case.

5. I had several occasions to talk to Phillip LaPointe concerning
the violations in his case, alot of the facts were unknown to him
in part due to the amnesia for the offense itself, and in part due
to the psychotropic medications the State had him on. Considering
the mental state he was in during those mid 1980's, as only a
layman's opinion I doubt he was competent at the time of trial,

(1)

but that was a matter to be handled by his post conviction counsel, as his family had hired Mr. Frederick Cohen.

6. Mr. LaPointe's case was used to uphold my case as Supreme Court authority, yet his issues were not being pursued by his counsel. I took matter's into my own hands and prepared a petition for habeas corpus relief using the issues from his direct appeal.

7. Because his counsel had not bothered to investigate his case fully concerning his actual innosence or the fact his statements were taken through use of force or the fact this was an unfit defendant at trial, these were not issues I could raise for him in the petition.

8. Phillip LaPointe expressed what he believed were legitimate concerns about the way his trial was conducted, however because of his amnesia my showing him in his transcripts that he was actually at those court hearings was the only way he could remember being there, as I believe he also expressed them to his attorney.

9. Further Affiant Sayeth Not.

Under Penalty of perjury
No Notary Available

/s/ Brad Lieberman
Mr. Brad Lieberman

8/7/02

401 Woodruff Rd
Joliet IL 60432

Subscribed and sworn to
before me on this
_____ day of _____,2002.

_____
Notary Public    None Available

(2)

8/7/02

MR. SASSON,

Please send me a copy of the enclosed affidavit for my files/recollection.

Also, please note that I tried to obtain notary service to no avail.

Also, please Tell Phil that law clerks at Pontiac were specifically told to give P.C. inmates lowest priority, coming after Death Row, Segregation and General population.
In fact, we would be disciplined/fired for actually writing pleadings for P.C. inmates.

Hope to hear from you soon.

Sincerely,

Brad Lieberman

STATE OF ILLINOIS )
                  ) SS.
COUNTY OF WILL    )

## AFFIDAVIT

I, <u>Michael Jones,</u> after being duly sworn to under oath state the following:

1)  I was the last inmate law clerk assigned to the Joliet Correctional Center library, I was shipped out on December 21, 2001.

2)  Inmate LaPointe who had recently been released from the restrictions on the prison industry program, began to seek assistance towards the end of 2001 for help in the matters of his case.

3)  In just a cursuary view and understanding of this guys case, I realized he had issues of actual innocense that his lawyer's never addressed, as the police evidence does not show a connection to this defendant.

4)  Secondly, the facts show totally ineffective assistance of counsel in the plea bargaining and lack of expert testimony for a competency hearing under 725 ILCS 5/104-11(a) and 5/104-16 and 5/104-21(a).

5)  Inmate La Pointe has retained counsel for his state habeas on being unconstitution sentenced subsequent to the Apprendi decision, but I have suggested based upon the evidence that he is actually innocent he should pursue his unsued post conviction redemy's.

6)  Inmate LaPointe has no understanding of what post conviction remedy's are, and I tried to help him as best I could before getting shipped out.

Michael Jones N52142
MICHAEL JONES N-52142

SUBSCRIBED AND SWORN BEFORE ME THIS

21st DAY OF ___June___ 2002.

_____
N O T A R Y   P U B L I C

OFFICIAL SEAL
**EDMUND BUTKIEWICZ**
NOTARY PUBLIC - STATE OF ILLINOIS
My Commission Expires October 11, 2005

Exhibit
C

This Order Is Not Precedential
And Is Not To Be Cited

No: 2--02--0702

**FILED**

AUG 2 9 2003

ROBERT J. MANGAN, CLERK
APPELLATE COURT 2nd DISTRICT

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) ) | No. 78--CF--317 |
| PHILLIP E. LaPOINTE, | ) ) | Honorable Perry R. Thompson, |
| Defendant-Appellant. | ) | Judge, Presiding. |

### RULE 23 ORDER

The defendant, Phillip LaPointe, appeals pro se from the June 26, 2002, order of the circuit court of Du Page County dismissing his petition for postconviction relief. On appeal, the petitioner argues that the trial court erred in dismissing his petition without an evidentiary hearing because he presented evidence that he received ineffective assistance of counsel, that he was actually innocent, and that he was sentenced in violation of Apprendi v. New Jersey, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000). The defendant also argues that the trial court erred in dismissing his petition as untimely. We affirm.

The record reveals that the defendant plead guilty to the 1978 murder of Peter Moreno, Jr., and was subsequently sentenced to a term of natural life imprisonment. The defendant's conviction and

EXHIBIT B

sentence were subsequently affirmed. People v. LaPointe, 88 Ill. 2d 482, 487 (1981).

On January 12, 2001, the defendant initiated habeas corpus proceedings (735 ILCS 5/10--101 et seq. (West 2000). The defendant argued that he was sentenced in violation of Apprendi v. New Jersey, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348, (2000). The trial court dismissed the defendant's petition and this court affirmed, holding that the defendant waived any Apprendi claim when he pleaded guilty. See LaPointe v. Chrans, 329 Ill. App. 3d 1080, 1086 (2002).

On May 1, 2002, the defendant filed a petition pursuant to the Post-Conviction Hearing Act (the Act) (725 ILCS 5/122--1 et seq. (West 2002)). The petition alleged that the defendant was entitled to relief under the Act because he had received ineffective assistance of trial counsel and of appellate counsel. The petition also alleged that he had been sentenced in violation of Apprendi.

On June 19, 2002, the trial court dismissed the defendant's petition as frivolous and patently without merit. The trial court explained that the defendant's allegations of ineffective assistance of counsel were waived because they could have been raised on direct appeal. The trial court additionally found that the defendant's factual allegations of ineffective assistance of appellate counsel revolved around an Apprendi challenge, which was barred by the defendant's guilty plea.

On June 26, 2002, the trial court reviewed the defendant's amended postconviction petition, which the defendant had mailed on

June 12, 2002. The defendant's amended petition raised the same arguments as had his original petition but further expanded the argument to many of his claims. The amended petition also added additional allegations of ineffective assistance of counsel and also added allegations claiming that the defendant was actually innocent. The trial court dismissed the amended petition, finding that, as the original petition, it was frivolous and patently without merit. The defendant thereafter filed a timely notice of appeal.

At the outset, we address the State's request that we strike the defendant's brief for failing to comply with the applicable Supreme Court Rules. The State argues that the defendant's brief violates Rule 341(a) (188 Ill. 2d R. 341(a)) by using narrow margins to evade the page limitations. The State further argues that, in violation of Rule 341(e)(2) (188 Ill. 2d R. 341(e)(2)), the defendant erroneously states the order from which he is appealing. In violation of Supreme Court 341(e)(9) (188 Ill. 2d R. 341(e)(9)) and Supreme Court Rule 342 (155 Ill. 2d R. 342), the State contends that the table of contents to the record in the defendant's appendix does not relate to the record that the defendant has filed in the instant case. The State argues that, in violation of Rule 341(e)(3) (188 Ill. 2d R. 341(e)(3)), the defendant's statement of issues presented is both detailed and contains citation of authorities. The State additionally argues that, in violation of Rule 341(e)(6) (188 Ill. 2d R. 341(e)(6)), the defendant's statement of facts include arguments. Furthermore,

the State argues that, in violation of Rule 341(e)(6) and (7) (188
Ill. 2d R. 341(e)(6),(7)), the defendant's statement of facts and
argument include statements that are not supported by the record.

We agree with the State that the defendant's brief is not in
compliance with Rule 341. Several of the deficiencies in his brief
greatly hinder our ability to review the defendant's contentions.
In particular, the defendant's failure to support several of his
contentions with references to the record precludes us from any
meaningful review of those issues. Nonetheless, to the extent that
the defendant's contentions are supported by the record,
affidavits, or other evidence, we choose to review the merits of
those contentions. See generally People v. Niezgoda, 337 Ill. App.
3d 593, 595 (2003). We therefore deny the State's motion and will
instead disregard any inappropriate materials or argument. See
Kincaid v. Smith, 252 Ill. App. 3d 618, 621 (1993).

We next address the defendant's "motion to amend the record on
appeal." The defendant seeks to supplement the record with
affidavits from his trial counsel and the psychiatrist who examined
him to determine if he was fit to stand trial. The defendant also
seeks to supplement the record with some of his medical records,
records from his federal court proceedings, as well as "evidence"
that he asserts support his claims of actual innocence. The State
requests that we deny the defendant's motion because the additional
items the defendant seeks to make part of the record were never
considered by the trial court. We agree. Our review of the record
reveals that the defendant never submitted these additional

documents for the trial court to review prior to the trial court dismissing his petition. As such, we deny the defendant's motion to amend the record. See People v. Guest, 166 Ill. 2d 381, 401 (1995) (holding that a defendant's attempt to introduce an affidavit for the first time on appeal was improper because it was not considered by the trial court that dismissed the defendant's postconviction petition).

Turning to the merits of the defendant's appeal, we note that the Act (725 ILCS 5/122--1 (West 2002)) provides a remedy to criminal defendants who have had substantial violations of their constitutional rights during their criminal trial. See People v. Hobley, 182 Ill. 2d 404, 428 (1998); People v. Vernon, 276 Ill. App. 3d 386, 391 (1995). A postconviction proceeding is not an appeal per se, but a collateral attack upon a final judgment. See People v. Lester, 261 Ill. App. 3d 1075, 1077 (1994). A pro se petitioner is entitled to an evidentiary hearing for his postconviction petition only when he presents the "gist" of a meritorious constitutional claim (People v. Porter, 122 Ill. 2d 64, 74 (1988)), and the record or accompanying affidavits support the allegations in the petition. (Vernon, 276 Ill. App. 3d at 391). The circuit court may summarily dismiss the petition if it is deemed "frivolous" or "patently without merit." 725 ILCS 5/122-- 2.1(a)(2) (West 1998). Moreover, in a postconviction proceeding, all issues actually decided on direct appeal are res judicata, and all issues which could have been presented but were not are waived. People v. Hampton, 165 Ill. 2d 472, 478 (1995). We review the

dismissal of a postconviction petition de novo. People v. Coleman, 183 Ill. 2d 366, 387-88 (1998).

On appeal, the defendant raises numerous issues in arguing why the trial court erred in dismissing his petition without an evidentiary hearing. However, most of the issues the defendant raises are waived because they are not supported by relevant authority (see People v. Patterson, 154 Ill. 2d 414, 454-55 (1992)), are not supported by the record, affidavits, or other evidence (see People v. Johnson, 183 Ill. 2d 176, 191 (1998)) or were not raised in the defendant's petitions before the trial court (see People v. French, 210 Ill. App. 3d 681, 689 (1991)). In reviewing the defendant's numerous contentions, we believe that he has preserved only five issues for review, namely whether: (1) his trial counsel and appellate counsel were ineffective for not arguing that there was a bona fide doubt about his competency to stand trial; (2) his appellate counsel was ineffective for not arguing that trial counsel was ineffective for failing to file a motion to withdraw the defendant's guilty plea; (3) the trial court erred in dismissing his petition as untimely; (4) the trial court erred in dismissing his claim of actual innocence; and (5) he was sentenced in violation of Apprendi v. New Jersey, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000). We will address each of these arguments in turn.

In order to succeed on a claim of ineffective assistance of either trial counsel or appellate counsel, a defendant must satisfy the two-pronged test set forth in Strickland v. Washington, 466

U.S. 668, 80 L. Ed.2d 674, 104 S. Ct. 2052 (1984); People v. Enis, 194 Ill. 2d 361, 376-77, (2000). The defendant must establish both that counsel's representation fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's errors, the outcome of the proceeding would have differed. People v. Little, 335 Ill. App. 3d 1046, 1052 (2003).

Whether there is a bona fide doubt of fitness for trial depends upon the facts of each case. People v. Fowler, 222 Ill. App. 3d 157, 164 (1991). The critical inquiry is whether the facts present a bona fide doubt that the defendant understood the nature and purpose of the proceedings against him and he was able to assist in the defense. Fowler, 222 Ill. App. 3d at 164. The fact that one is suffering from a mental illness does not necessarily render him unfit to stand trial. See People v. Eddmonds, 143 Ill. 2d 501, 519 (1991). The defendant has the burden of showing in his petition sufficient facts to raise a bona fide doubt of his fitness to stand trial. People v. Easley, 192 Ill. 2d 307, 319 (2000).

Here, a review of the record does not reveal that defendant's trial counsel was ineffective for not challenging the defendant's fitness to stand trial. In fact, the record contradicts the defendant's assertions. The record reveals that, on April 13, 1978, Dr. Lyle Rossiter examined the defendant, at the request of defense counsel, to determine the defendant's psychiatric status. Dr. Rossiter determined that the defendant understood the nature of the legal proceedings against him and was able to cooperate with

defense counsel. Dr. Rossiter further determined that the defendant was mentally fit to stand trial.

Thus, based on this record, it is apparent that trial counsel was not ineffective for not challenging the defendant's fitness to stand trial. Indeed, it is apparent that defense counsel researched this issue and determined that the defendant's psychiatric condition would not serve as a basis to prevent the defendant from standing trial for his crime. Although the defendant cites several examples from the trial proceedings which he claims indicates that, during the proceedings, he was suffering the adverse affects of taking psychotropic medications to treat his LSD flashbacks, none of these examples overcome Dr. Rossiter's report that indicated the defendant was fit to stand trial. Accordingly, because trial counsel was not ineffective on these grounds, the defendant's claim that his appellate counsel was ineffective for not arguing trial counsel's ineffectiveness on these grounds must also fail. See People v. Childress, 191 Ill. 2d 168, 175 (2000).

We also find without merit the defendant's contention that his appellate counsel was ineffective for not arguing that his trial counsel was ineffective for failing to file a motion to withdraw his guilty plea. The record reveals that the reviewing court considered this precise issue on direct appeal and, in fact, determined that trial counsel was ineffective. See People v. LaPointe, 85 Ill. App. 3d 215, 219 (1980), rev'd on other grounds, 88 Ill. 2d 482, 501-02 (1981). Thus, the defendant's argument is

barred by <u>res judicata</u>. See <u>People v. Scott</u>, 194 Ill. 2d 268, 274 (2000).

The defendant's next contention on appeal is that the trial court erred in dismissing his petition as untimely. The defendant argues that a trial court may not dismiss a postconviction petition as untimely at the first stage of a postconviction proceeding. We agree with the defendant's statement of law. See <u>People v. Boclair</u>, 202 Ill. 2d 89, 99 (2002) (holding that a trial court may not summarily dismiss a postconviction petition solely on the basis of its untimeliness). However, based on our review of the record, it is apparent that the trial court did not dismiss the defendant's petition on timeliness grounds. Rather, taking the trial court's statements as a whole, it is evident that the trial court dismissed the defendant's petitions on the ground that the claims were frivolous and patently without merit rather than on the basis that the defendant's petitions were untimely. As such, the defendant's contention is without merit.

We also reject the defendant's contention that the trial court erred in dismissing his claim of actual innocence. In order to support a claim of actual innocence, the defendant must submit new noncumulative evidence material to the claim that could not have been obtained through due diligence at the time of trial. See <u>People v. Washington</u>, 171 Ill. 2d 475, 489 (1996). Courts may consider a freestanding claim of actual innocence in a postconviction proceeding if there is "new, material, noncumulative" evidence. <u>Washington</u>, 171 Ill. 2d at 489. Newly

discovered evidence is evidence that was unavailable at trial and
could not have been discovered sooner through due diligence.
People v. Burrows, 172 Ill. 2d 169, 180 (1996). As a general rule,
hearsay affidavits are insufficient. People v. Cole, 215 Ill. App.
3d 585, 588 (1991).

Here, none of the defendant's affidavits nor the record
supports his claims of actual innocence. In fact, the record on
appeal contradicts the defendant's claims. In support of his
postconviction petition, the defendant attached as an exhibit a
1997 report of Dr. Rossiter. Dr. Rossiter had re-examined the
defendant that year to determine the defendant's mental state
during the 1978 trial. In his report, Dr. Rossiter recounted how
the defendant had acknowledged that he had shot the victim during
a robbery. The defendant also expressed remorse and stated that he
felt "bad that [he] took another man's life." Based on this
record, the defendant's claim of actual innocence was patently
without merit.

The defendant's final contention is that he is entitled to
relief because he was sentenced in violation of Apprendi. The
defendant raised the identical argument in his petition for habeas
corpus relief, which this court rejected in LaPointe v. Chrans, 329
Ill. App. 3d 1080, 1086 (2002). Consequently, the defendant's
argument is barred by res judicata. See People v. Teague, 228 Ill.
App. 3d 855, 857 (1992) (principles of res judicata prevented the
defendant from raising, on post-conviction, issues which had been
addressed pursuant to a federal habeas corpus petition).

No. 2--02--0702

Furthermore, even if the defendant's argument was not barred by res judicata, the defendant waived his right to claim he was sentenced in violation of Apprendi by pleading guilty. See People v. Jackson, 199 Ill. 2d 286, 302 (2002) (holding that defendant knowingly relinquished her rights at issue in Apprendi when she pleaded guilty). Moreover, the defendant's argument is also without merit because Apprendi does not apply retroactively to cases such as his. See People v. De La Paz, 204 Ill. 2d 426, 428-29 (2003) (holding that Apprendi does not apply retroactively to causes in which the direct appeal process had concluded at the time that Apprendi was decided).

For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

GILLERAN JOHNSON, J., with McLAREN and O'MALLEY, JJ., concurring.

This Order Is Not Precedential
And Is Not To Be Cited

No. 2--08--0236

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 78--CF--317 |
| PHILLIP E. LaPOINTE, | ) ) | Honorable Perry R. Thompson, |
| Defendant-Appellant. | ) | Judge, Presiding. |

**RULE 23 ORDER**
**Modified Upon Denial of Rehearing**

Defendant, Phillip E. LaPointe, appeals from an order denying his third application under

section 122--1(f) of the Post-Conviction Hearing Act (Act) (725 ILCS 5/122--1(f) (West 2008)) for

leave to file a second petition for relief. We affirm.

In 1978, defendant was charged with first-degree murder (Ill. Rev. Stat. 1977, ch. 38, par.

9--1(a)(1)). After rejecting a plea offer under which the State would have recommended a sentence

of 40 years' imprisonment, defendant entered an open plea of guilty. The trial court found that

defendant's crime was accompanied by exceptionally brutal and heinous conduct indicative of wanton

cruelty (see Ill. Rev. Stat. 1978 Supp., ch. 38, par. 1005--8--1(a)(1)) and, for this reason, sentenced

him to life imprisonment. Five days later, defendant wrote to his attorney, Edward Simpson, asking

him to move to withdraw the guilty plea. Simpson did not move under Supreme Court Rule 604(d)

Exhibit
E

(Ill. Rev. Stat. 1977, ch. 110A, par. 604(d), now codified as amended at 210 Ill. 2d R. 604(d)) to vacate the judgment and withdraw the guilty plea. He filed a notice of appeal, then a motion to reconsider the sentence. The trial court refused to consider the motion, holding that the appeal had divested it of jurisdiction to do so.

On appeal, defendant raised only sentencing issues. The State contended that the lack of a timely Rule 604(d) motion barred consideration of these issues. We disagreed. We explained that Simpson's failure to move to withdraw the guilty plea amounted to ineffectiveness, which was "further evidenced" by his untimely motion to reconsider the sentence, and that Simpson's ineffectiveness allowed us to entertain the appeal. People v. LaPointe, 85 Ill. App. 3d 215, 219 (1980), rev'd, 88 Ill. 2d 482 (1981). We turned to the merits, without discussing whether to remand the cause in order to allow defendant to move to withdraw his guilty plea. We held that defendant's life sentence was excessive, and we reduced it to 60 years. LaPointe, 85 Ill. App. 3d at 224. On the State's appeal, however, the supreme court affirmed the life sentence. LaPointe, 88 Ill. 2d at 501-02.

Defendant filed numerous collateral actions. To resolve this appeal, we need consider only those brought under the Act. Defendant's first postconviction petition, filed May 1, 2002, raised several claims that Simpson had been ineffective. The one pertinent here alleged as follows. After learning of the State's plea offer, defendant, who was 18 years old, told Simpson, "I couldn't accept [the 40-year sentence] because I'll be 58 when I get out." Simpson never explained to defendant that he could receive day-for-day good-conduct credit. Had defendant known that his actual sentence could have been as little as 20 years, he would have accepted the State's offer. On September 23, 1978, five days after starting his sentence and well within the time to move to withdraw his plea, defendant wrote Simpson a letter asking him to do so. The letter read in part:

-2-

"[W]hen I got here a captain tuttle [sic] checked me in and said something about how I won't

be getting any good time, I asked around about what is good time. I found out you get days

for everyday [sic] your [sic] here which means you only serve half your sentence. Why didn't

you tell me about that? When you told me the state [sic] had offered a 40 year [sic] sentence

I thought I'd be 58 when I got out, if you had told me about this good time stuff I would of

[sic] taken that deal. Can we still get it? The judge said something about taking back my

guilty plea within 30 days, lets [sic] do that. You can let him know how you didn't tell me

about this good time stuff and that I'll take that deal, please let me know what happens next."

Defendant's petition alleged further that, on September 25, 1978, before consulting defendant

or even receiving his letter, Simpson filed a notice of appeal. On October 4, 1978, after receiving the

letter, Simpson moved to reconsider the sentence. The trial court refused to hear the motion.

Defendant's petition also alleged that his appellate counsel had been ineffective for "failing to

address trial counsel's ineffectiveness concerning his stipulation or guilty plea proceedings." Further,

the appellate court "should have remanded for a hearing on the motion to withdraw the guilty plea,

but insted [sic] ruled sua sponte [sic] that counsel was ineffective." Appellate counsel "should have

upon this ruling asked for a remand to investigate the depth of ineffectiveness."

The trial court dismissed the petition summarily, and defendant appealed. This court affirmed.

We first explained that, discounting claims of error that were forfeited or unsupported by evidence,

only five issues were before us. One was whether defendant's appellate counsel "was ineffective for

not arguing that trial counsel was ineffective for failing to file a motion to withdraw defendant's guilty

plea." People v. LaPointe, No. 2--02--0702, slip order at 6 (2003) (unpublished order under Supreme

Court Rule 23). The other issues that we addressed did not include whether Simpson had been

ineffective specifically for failing to move to withdraw defendant's guilty plea--or whether defendant

was therefore entitled to a remand for the filing of such a motion. Rejecting defendant's argument that appellate counsel was ineffective for not raising Simpson's failure to move to withdraw the guilty plea, we held, "The record reveals that the [appellate] court considered this precise issue on direct appeal and, in fact, determined that trial counsel was ineffective. [Citation.] Thus, the defendant's argument is barred by res judicata. [Citation.]" LaPointe, No. 2--02--0702, slip order at 8-9.

On January 28, 2004, defendant filed (or purported to file) a second postconviction petition that claimed that Simpson had been ineffective in many ways, including failing to explain fully the State's plea offer, and that defendant's attorneys on his direct appeal and the appeal in his postconviction proceeding had also been ineffective. On April 2, 2004, defendant filed his first application under section 122--1(f) of the Act. That section reads (and read then):

"Only one petition may be filed by a petitioner *** without leave of the court. Leave of court may be granted only if a petitioner demonstrates cause for his or her failure to bring the claim in his or her initial post-conviction proceedings and prejudice results from that failure. For purposes of this subsection (f): (1) a prisoner shows cause by identifying an objective factor that impeded his or her ability to raise a specific claim during his or her initial post-conviction proceedings; and (2) a prisoner shows prejudice by demonstrating that the claim not raised during his or her initial post-conviction proceedings so infected the trial that the resulting conviction or sentence violated due process." 725 ILCS 5/122--1(f) (West 2004).

In contending that he had met the cause-and-prejudice test, defendant argued that (1) the proceedings on the first postconviction petition were flawed because the trial court based the summary dismissal on waiver (forfeiture); and (2) he had been prejudiced by the numerous errors in the underlying criminal case, including Simpson's failure to inform him accurately about the State's

offer. People v. LaPointe, 365 Ill. App. 3d 914, 918-19 (2006), aff'd, 227 Ill. 2d 39 (2007). The trial court denied defendant's application. On appeal, defendant contended only that the trial court had erred in summarily dismissing his petition more than 90 days after it was filed (see 725 ILCS 5/122--2.1(a) (West 2004)). We disagreed, explaining that the trial court had not summarily dismissed the proposed second petition, but had instead refused to let defendant file it. Thus, the court had not violated the 90-day time limit, which applies to petitions that have actually been filed and not to applications under section 122--1(f) to file successive petitions. LaPointe, 365 Ill. App. 3d at 920-21. The supreme court agreed and affirmed. LaPointe, 227 Ill. 2d at 44-45.

On April 12, 2005, while his appeal from the denial of his first section 122--1(f) application was pending, defendant filed a second application, attaching a proposed second petition. The proposed petition alleged, in part, that Simpson had performed ineffectively by misleading defendant about the State's plea offer and ignoring defendant's prompt request to move to withdraw the guilty plea. Also, defendant claimed that, on his appeal, this court erred in failing to remand the cause so that he could move to withdraw his plea. The trial court denied the application, and defendant appealed.

On appeal, defendant's counsel moved to withdraw, asserting that no meritorious issues existed (see Pennsylvania v. Finley, 481 U.S. 551, 95 L. Ed. 2d 539, 107 S. Ct. 1990 (1987)). We granted the motion and affirmed the judgment. We agreed with counsel that defendant had not met section 122--1(f)'s cause-and-prejudice test, as he had not shown why his claim that Simpson was ineffective could not have been raised in his first petition. People v. LaPointe, Nos. 2--05--0403, 2--05--0404, 2--05--0463 cons., slip order at 7-8 (2007) (unpublished order under Supreme Court Rule 23).

On January 10, 2008, defendant filed his third section 122--1(f) application for leave to file a second petition, attaching the proposed petition. In the proposed petition, defendant claimed, among other things, that Simpson had been ineffective for failing to honor his prompt request to move to withdraw the guilty plea on the ground that defendant had not realized, because Simpson had not told him, that he could receive day-for-day credit against the proposed 40-year sentence. Further, he maintained that, on direct appeal, this court properly recognized that Simpson should have moved to withdraw the plea, but we erred in not remanding the cause so that defendant could, through counsel, file such a motion. Finally, defendant asserted, our affirmance of the dismissal of his first postconviction petition should not bar him from raising his claim in a second petition, because he had never been granted the proper relief: a remand so that he could move to withdraw his plea. The trial court denied defendant's application, and he timely appealed.

On appeal, defendant contends that he satisfied section 122--1(f)'s cause-and-prejudice test, because our courts have failed to address his claim that Simpson was ineffective for disregarding his request to move to withdraw his guilty plea. He maintains that, in the proceedings on his first petition, we misinterpreted his claim and mistakenly invoked res judicata to dispose of it and that our error so infected the proceedings as to deny him due process.

The State responds that defendant's case does not come within section 122--1(f), which allows him to file a second postconviction petition only if he can show that something prevented him from bringing his ineffectiveness claim in his first petition. The State observes that defendant himself asserts that "he did raise the issue and this Court did not understand it." (Emphasis added.) For this reason, the State also contends that our original resolution of the ineffectiveness claim, however erroneous, has res judicata effect on defendant's attempt to raise it in a second petition. See People v. Free, 122 Ill. 2d 367, 375-76 (1988).

-6-

We agree with the State that the judgment must be affirmed. However, we rely primarily not on our reading of section 122--1(f), but on procedural grounds: defendant has forfeited his argument.

Principles of forfeiture apply to claims brought in a postconviction petition. Specifically, "[a]ny claim *** not raised in the original or an amended petition is waived" (725 ILCS 5/122--3 (West 2008); see People v. Washington, 348 Ill. App. 3d 231, 236 (2004)). Further, even if a petition raises a claim, the claim is forfeited, and barred from further review, if the trial court dismisses or denies the petition and the defendant does not appeal. People v. Core, 48 Ill. 2d 544, 545-46 (1971).

On the appeal from the denial of his first application, defendant mentioned neither the cause-and-prejudice argument nor the underlying claim; he contended only that the (proposed) second petition should have been docketed for further proceedings under the Act. In his second section 122--1(f) application, defendant raised his claim of Simpson's ineffectiveness, and he also raised (at least arguably) his cause-and-prejudice argument. However, as far as we can say, on appeal neither the appellate defender nor defendant argued that our treatment of the first postconviction petition created circumstances that met the cause-and-prejudice test.

Because defendant has twice forgone or abandoned the grounds on which he now seeks to file a second postconviction petition, he has procedurally defaulted any such grounds. Therefore, the trial court properly denied him permission to file the proposed second petition. The trial court did not rely on this reasoning in denying defendant's application, but we may affirm its judgment on any ground of record. See People v. Rivera, 346 Ill. App. 3d 398, 405 (2002).

Although we affirm on the ground of procedural default, fairness to both parties requires us to address defendant's argument on the merits. In granting oral argument, we asked the parties to address whether, if this court misconstrued or neglected defendant's first petition's ineffective-assistance claim, defendant would be entitled to file a second petition.

In this respect, we must concede that defendant's assertion that we erred in holding that res judicata barred his ineffective-assistance claim appears to be well founded. Defendant's first postconviction petition contended that Simpson was ineffective not because he failed to file any postjudgment motion so as to preserve defendant's right to an appeal, but because he failed to move to withdraw the guilty plea on the specific ground that defendant's letter to Simpson provided a meritorious basis to do so. On his appeal, defendant's initial brief also raised this claim. In his reply brief, defendant again contended that he had stated the gist of a meritorious claim that Simpson's failure to move to withdraw the guilty plea prevented the trial court from considering whether defendant turned down the State's plea offer only because Simpson had not let him know how much actual time he would likely serve.

Finally, even after this court affirmed the dismissal of the first postconviction petition, defendant petitioned for rehearing. His petition for rehearing pointed out that, on his direct appeal, we held only that Simpson had been ineffective for failing to file any postjudgment motion, and we granted no relief other than hearing defendant's appeal on its merits. Thus, our opinion on direct appeal did not address, and could not have addressed, defendant's claim that a matter outside the record--his letter to Simpson–showed that Simpson had been ineffective for failing to move to withdraw the guilty plea. Defendant's petition for rehearing concluded that our opinion on direct appeal could not have had res judicata effect on the ineffectiveness claim that he raised under the Act. This court denied the petition for rehearing, without explaining why we found it unpersuasive. We now acknowledge that our decision at the very least required a sound rationale that we did not provide.

Our acknowledgment that our handling of the first postconviction proceeding may have been flawed does not, however, mean that defendant is entitled to file a second postconviction petition.

An erroneous result is itself an insufficient ground for a second chance to raise a claim. Even before the adoption of section 122--1(f) of the Act, it had long been established that (with an exception similar to section 122--1(f)'s cause-and-prejudice provision) a ruling on an initial postconviction petition has res judicata effect on all claims that the petition raised or could have raised. Free, 122 Ill. 2d at 376; People v. Richeson, 50 Ill. 2d 46, 48-49 (1971). And it has never been the law that res judicata applies only to sound judgments. Instead, "however erroneous the decision may be, it is binding upon all parties ***. In other words, the court having jurisdiction has jurisdiction to decide erroneously as well as correctly." People ex rel. McAllister v. East, 409 Ill. 2d 379, 383 (1951); see also LaSalle National Bank v. County Board of School Trustees of Du Page County, 61 Ill. 2d 524, 528-29 (1975); Fender v. St. Louis Southwestern Ry. Co., 73 Ill. App. 3d 522, 525 (1979).

Section 122--1(f) provides no escape from the principle of finality. Indeed, it codifies the principle: no second or subsequent petition may be filed without a showing of cause and prejudice. 725 ILCS 5/122--1(f) (West 2008). The cause-and-prejudice exception does not extend to the erroneous resolution of a claim that the defendant had a full and fair opportunity to raise in a prior postconviction proceeding. To file a successive petition under the Act, a petitioner must demonstrate "cause for his or her failure to bring the claim in his or her initial post-conviction proceedings." 725 ILCS 5/122--1(f) (West 2008). As the State notes, defendant admittedly did not fail to bring his ineffective-assistance claim in his initial postconviction petition; he succeeded in bringing the claim, and he now seeks leave to file a second petition on the ground that the courts failed to decide it correctly. The plain language of section 122--1(f) speaks only of a defendant's inability to raise a claim, not about the courts' inability to resolve it properly. When statutory language is unambiguous, we must enforce it as written. Henrich v. Libertyville High School, 186 Ill. 2d 381, 391 (1998). Doing so, we must reject defendant's argument that he met the cause-and-prejudice test.

At oral argument, we asked defendant's counsel whether any case law supports his contention that mere judicial error can satisfy the cause-and-prejudice test. Counsel candidly admitted that he had found no such authority. We have found no such authority either, and we could not create it without doing violence to the plain language of the Act. Therefore, even were we to disregard the procedural default upon which we base our judgment, we would have to affirm the judgment denying defendant leave to file his proposed second postconviction petition.

We recognize the potential harshness of the result that we feel compelled to reach. Defendant reminds us that, although he waited only five days after beginning his sentence to ask his attorney to move to withdraw his plea, he has spent more than three decades without having his request honored. Nonetheless, the Act does not give defendant redress for what he sees as an injustice. Defendant's legal recourse, if any, lies elsewhere.

The judgment of the circuit court of Du Page County is affirmed.

Affirmed.

SCHOSTOK, J., with BOWMAN and HUDSON, JJ., concur.

judgment in light of *People v. Thompson*, 228 Ill.2d 598, 345 Ill.Dec. 560, 939 N.E.2d 403 (2010), to determine if a different result is warranted.



**1**

239 Ill.2d 582
940 N.E.2d 1156

Lloyd SHORTY, petitioner,

v.

PEOPLE State of Illinois, respondent.

No. 111008.

Supreme Court of Illinois.

Jan. 26, 2011.

Petition for leave to appeal denied.

In the exercise of this Court's supervisory authority, the Appellate Court, Third District, is directed to vacate its judgment in *People v. Shorty*, 403 Ill.App.3d 625, 343 Ill.Dec. 323, 934 N.E.2d 647 (2010). The appellate court is directed to reconsider its judgment in light of *People v. Thompson*, 228 Ill.2d 598, 345 Ill.Dec. 560, 939 N.E.2d 403 (2010), to determine if a different result is warranted.

**2**

239 Ill.2d 577
940 N.E.2d 1156

PEOPLE State of Illinois, petitioner,

v.

Eric RADCLIFF, respondent.

No. 111024.

Supreme Court of Illinois.

Jan. 26, 2011.

Petition for leave to appeal denied.

In the exercise of this Court's supervisory authority, the Appellate Court, First District, is directed to vacate its judgment in *People v. Radcliff*, case No. 1-00-1400 (08/05/10). The appellate court is directed to reconsider its judgment in light of *People v. Thompson*, 228 Ill.2d 598, 345 Ill.Dec. 560, 939 N.E.2d 403 (2010), to determine if a different result is warranted.

**3**

239 Ill.2d 576
940 N.E.2d 1156

PEOPLE State of Illinois, petitioner,

v.

James NOVAKOWSKI, respondent.

No. 111281.

Supreme Court of Illinois.

Jan. 26, 2011.

Petition for leave to appeal denied.

In the exercise of this Court's supervisory authority, the Appellate Court, First District, is directed to vacate its judgment in *People v. Novakowski*, case No. 1-08-2313 (08/12/10). The appellate court is directed to reconsider its judgment in light

---

of *People v. Miller*, 238 Ill.2d 161, 345 Ill.Dec. 59, 938 N.E.2d 498 (2010).



**1**

239 Ill.2d 580
940 N.E.2d 1157

PEOPLE State of Illinois, petitioner,

v.

Rayshawn SAFFOLD, respondent.

No. 111344.

Supreme Court of Illinois.

Jan. 26, 2011.

Petition for leave to appeal denied.

In the exercise of this Court's supervisory authority, the Appellate Court, First District, is directed to vacate its judgment in *People v. Saffold*, case No. 1-08-1152 (09/30/10), and reconsider its judgment in light of *People v. Thompson*, 228 Ill.2d 598, 345 Ill.Dec. 560, 939 N.E.2d 403 (2010), to determine if a different result is warranted.



**2**

239 Ill.2d 571
940 N.E.2d 1157

PEOPLE State of Illinois, respondent,

v.

Philip E. LaPOINTE, petitioner.

No. 111395.

Supreme Court of Illinois.

Jan. 26, 2011.

Petition for leave to appeal denied.

In the exercise of this Court's supervisory authority, the Appellate Court, Second District, is directed to vacate its judgment in *People v. LaPointe*, case No. 2-08-0256 (10/22/10), affirming an order denying defendant's third application for leave to file a second petition for post-conviction relief. The appellate court is directed to remand to the circuit court to allow defendant an opportunity to file a successive post-conviction petition limited only to the issue of whether trial counsel was ineffective in failing to file a motion to withdraw defendant's guilty plea on the grounds stated in defendant's alleged September 23, 1978 letter to counsel. (See slip op. at 2–3.) If defendant so chooses to file a successive petition for post-conviction relief, as limited, the circuit court will then consider that successive petition pursuant to 725 ILCS 5/122-2.1, 122-4 to 122-6. This order does not express any opinion on the merits of defendant's contentions or his entitlement to any form of relief. If defendant chooses not to file a successive post-conviction petition, as limited, within 60 days, the circuit court shall so notify the appellate court, which may then reinstate its judgment.



**3**

239 Ill.2d 552
940 N.E.2d 1157

LINCOLN PARK ZOO et al. (Lincoln Park Zoological Society, petitioner),

v.

Mary GRUNDY, respondent.

No. 111560.

Supreme Court of Illinois.

Jan. 26, 2011.

Petition for leave to appeal or appeal as a matter of right denied.



Exhibit F

DIXON CORRECTIONAL CENTER

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of Du Page County. |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 78-CF-317 |
| | ) | |
| PHILLIP E. La POINTE, | ) | Honorable |
| | ) | Robert G. Kleeman, |
| Defendant-Appellant. | ) | Judge, Presiding. |

PRESIDING JUSTICE SCHOSTOK delivered the judgment of the court, with opinion. Justices Zenoff and Burke concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant, Phillip E. La Pointe, appeals a judgment that denied his successive petition for relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2012)) against his life sentence for first-degree murder (Ill. Rev. Stat. 1977, ch. 38, ¶ 9-1(a)(1)). On appeal, defendant contends that he proved that Edwin Simpson, the assistant public defender who represented him when he pleaded guilty and was sentenced, was ineffective. We affirm.

¶ 2    On March 7, 1978, defendant, who was 18 years old, shot and killed Peter Moreno, Jr., a taxicab driver. The State charged defendant with (1) first-degree murder based on the intent to kill (first-degree murder) (Ill. Rev. Stat. 1977, ch. 38, ¶ 9-1(a)(1)); (2) felony murder (Ill. Rev.



Exhibit
6

Stat. 1977, ch. 38, ¶ 9-1(a)(3)); and armed robbery (Ill. Rev. Stat. 1977, ch. 38, ¶ 18-2(a)).
Defendant initially pleaded not guilty.

¶ 3    On June 16, 1978, the trial court, Judge Edwin L. Douglas presiding, held a hearing.
Simpson stated that, by agreement, defendant wished to withdraw his plea and plead guilty to
first-degree murder only, with no agreement on sentencing. In response to Judge Douglas's
questions, defendant stated that he understood the charge and wished to plead guilty to it.

¶ 4    Assistant State's Attorney Thomas Knight then provided the following factual basis. On
the morning of March 7, 1978, defendant visited David Cichelli at the gas station where Cichelli
worked and told him that he was going to rob and kill a cab driver. Defendant showed Cichelli a
loaded .22-caliber revolver. Shortly afterward, defendant left, walked two blocks, and called for
a cab. Moreno arrived, picked up defendant, and drove to the area of York Commons.
Defendant shot Moreno twice in the head with the revolver. He then drove the cab, with
Moreno's body inside, a short distance and left it there. Defendant took some money from
Moreno, returned to the gas station, and told Cichelli, " 'Well. I did it. I killed him.' " He added
that he had killed Moreno because Moreno could identify him.

¶ 5    The factual basis continued as follows. Later that day, the police found the cab with
Moreno lying dead inside. On March 8, 1978, defendant was arrested and taken to the police
station. He admitted that he had called the cab; that he was in the cab when he heard two shots
fired; and that only he and Moreno had been in the cab then. Defendant said that the gun was
now in his home. The police obtained and executed a search warrant and found the gun. When
defendant shot Moreno, he was not under the influence of drugs or any mental incapacity that
negated the intent required for first-degree murder.

¶ 6    The following colloquy then ensued:

"THE COURT: ***

Mr. Lapointe [*sic*], what you have heard the State's Attorney indicate just now, is that substantially the—is that basically correct?

DEFENDANT LAPOINTE: Most of it, yes, sir.

THE COURT: Most of it?

DEFENDANT LAPOINTE: Yeah.

THE COURT: What do you mean by 'most of it'?

MR. SIMPSON: Your Honor, for the purpose of this record, Mr. Lapointe [*sic*], and I as his attorney, will stipulate that were the matter to go to trial, that is the evidence that the State would prove or show if the case were to go to trial."

¶ 7    Judge Douglas further admonished defendant. After defendant reiterated that his plea was voluntary, the following colloquy occurred:

"THE COURT: Let the record show that the Court further advises you that upon your plea of guilty to the crime of murder, the Court must impose a sentence within the possibilities as follow[s]: At the very least the Court must impose a sentence of a specific number of years of imprisonment, and that number cannot be less than 20. That specific number of years can be as high as 40 years.

Some examples would be 25 years, 28 years, 37 years or 40 years. Do you understand this possible sentence?

DEFENDANT LAPOINTE: Yes, I do.

THE COURT: Or the Court may impose a sentence of a specific number of years of imprisonment of not less than 40 nor more than 80 years if you were 17 years or older on the date the crime was committed and either you have previously been convicted

- 3 -

within the last ten years of a felony of an equal or greater class than that to which you are tendering your plea of guilty.

In your case, that could only be a previous murder conviction or if the Court finds that the crime you committed was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty.

Do you understand this possibility?

DEFENDANT LAPOINTE: Yes, I do.

THE COURT: It is also possible for the Court to impose a sentence of imprisonment for the rest of your natural life without parole if the Court finds either that the murder you committed was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty or you were 18 years or older at the time of the crime and the person you murdered was killed during the course of an armed robbery and was actually killed by you and not some other party to the crime or simply as a consequence of that crime, and you killed that person intentionally or with the knowledge that the acts which caused the death, created a strong probability of death or great bodily harm.

Do you understand this possible sentence?

DEFENDANT LAPOINTE: Yes, I do."

¶ 8     Judge Douglas further admonished defendant that he could be sentenced to death if, at the State's request, the court held a hearing in aggravation and mitigation and a jury unanimously found (or, if defendant waived a jury, the judge found) beyond a reasonable doubt that (1) defendant committed the murder during an armed robbery; and (2) no mitigating factors existed that were sufficient to preclude the death penalty. If the jury (or judge) so found, the court would be required to sentence defendant to death. Defendant said that he understood.

2015 IL App (2d) 130451

¶ 9    Next, the judge admonished defendant that, if he were sentenced to prison for less than life, he would, upon his release, have to serve three years of mandatory supervised relief (MSR); if he violated any conditions of his MSR, he could be reincarcerated. Defendant said that he understood. He also stated that he had no questions concerning the possible sentences and that he still wished to plead guilty to first-degree murder. The judge then found that defendant had voluntarily pleaded guilty and that there was a factual basis for the plea.

¶ 10   Simpson briefly questioned defendant. In response, defendant stated that the State had given Simpson information that Simpson had then discussed with defendant; that Simpson's investigator had obtained other information, which Simpson had also shared with defendant; and that Simpson had not threatened or coerced him into pleading guilty.

¶ 11   We must now note that, effective February 1, 1978, Public Act 80-1099, § 3, amended section 3-6-3 of the Unified Code of Corrections (Code) (Ill. Rev. Stat. 1977, ch. 38, ¶ 1003-6-3) to provide as follows (additions are italicized, and deletions are noted by strikeouts, as in the original act):

"§ 3-6-3. Rules and Regulations for *Early Release* ~~Diminution of Sentence.~~) [*sic*]
(a)*(1)* The Department of Corrections shall prescribe rules and regulations for the *early release* ~~diminution of sentences~~ on account of good conduct ~~or meritorious service~~ of persons committed to the Department *which shall be subject to review by the Prisoner Review Board.*

*(2) Such rules and regulations shall provide that the prisoner shall receive one day of good conduct credit for each day of service in prison for all classes of felonies other than where a sentence of 'natural life' has been imposed. Each day of good conduct credit shall reduce by one day the inmate's period of incarceration set by the*

- 5 -

2015 IL App (2d) 130451

*court.* ~~The maximum sentence shall not be diminished, except with the approval of the Director of the Department of Corrections.~~

*(3) Such rules and regulations shall also provide that the Director may award up to 90 days additional good conduct credit for meritorious service in specific instances as the Director deems proper.*

(b) Whenever a person is or has been committed under separate convictions, with separate sentences, such sentences shall be construed under Section 5-8-4 [of the Code (Ill. Rev. Stat. 1977, ch. 38, ¶ 1005-8-4)] in granting and forfeiting of good time.

(c) The Department shall prescribe rules and regulations for revoking good *conduct credit* ~~time~~*, or suspending or reducing the rate of accumulation thereof for specific rule violations,* during imprisonment ~~or release on parole or mandatory release under supervision.~~ *Such rules and regulations shall provide that:*

*(1) good conduct credits previously earned shall accumulate on a monthly basis.*

*(2) no inmate may be penalized more than one year of good conduct credit for any one infraction.*

*When the Department seeks to revoke, suspend or reduce the rate of accumulation of any good conduct credits for an alleged infraction of its rules, it shall bring charges therefor against the prisoner sought to be so deprived of good conduct credits before the Prisoner Review Board \*\*\* if the amount of credit at issue exceeds 30 days or when during any 12[-]month period, the cumulative amount of credit revoked exceeds 30 days. However, the Board shall not be empowered to review the Department's decision with respect to the loss of 30 days of good conduct credit within any calendar year for any prisoner or to increase any penalty beyond the length requested by the Department.*